CITY OF LANSING *v.* BOARD OF CANVASSERS FOR THE CITY OF LANSING.

DECISION OF THE COURT.

1. MUNICIPAL CORPORATIONS—MANDAMUS—BONDS—APPROVAL.
  Mandamus was properly issued to compel city board of canvassers to recertify results of special election that street improvement bonds and sewer and drain bonds had been approved by a majority vote of electors voting thereon (CLS 1961, § 117.5, as amended by PA 1966, No 350; Lansing City Charter, § 8.10[a][1]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 34 Am Jur, Mandamus §§ 155, 162; 37 Am Jur, Municipal Corporations § 69.
[2-4, 10] 43 Am Jur, Public Securities and Obligations § 77.
[5] 37 Am Jur, Municipal Corporations §§ 102, 103, 105, 107.
[6, 8, 12, 14] 37 Am Jur, Municipal Corporations §§ 102, 103, 107; 43 Am Jur, Public Securities and Obligations § 77.
[7] 43 Am Jur, Public Securities and Obligations § 45.
[9] 43 Am Jur, Public Securities and Obligations §§ 32, 37.
[11] 43 Am Jur, Public Securities and Obligations § 32.
[13] 34 Am Jur, Mandamus §§ 155, 162; 43 Am Jur, Public Securities and Obligations § 100.
[15] 43 Am Jur, Public Securities and Obligations §§ 100, 102.
[16, 20] 5 Am Jur 2d, Appeal and Error § 1009.
[17, 18] 43 Am Jur, Public Securities and Obligations §§ 100–103.
[19] 34 Am Jur, Mandamus §§ 155, 162; 43 Am Jur, Public Securities and Obligations §§ 100–103.

DISSENTING OPINION.

BLACK, T. M. KAVANAGH, and SOURIS, JJ.

2. MUNICIPAL CORPORATIONS—APPROVAL OF BOND ISSUE—AMEND-
MENT OF CHARTER BY AMENDMENT OF HOME-RULE ACT.

*Home-rule city charter requirement of 3/5 voter approval for*
*issuance of general obligation bonds, was automatically*
*amended by amendment of city home-rule act requiring ap-*
*proval of only a majority of the voters (CLS 1961, § 117.5[e],*
*as amended by PA 1966, No 350; Lansing City Charter,*
*§ 8.10[a][1]).*

3. SAME—BONDS—HOME-RULE ACT.

*The legislative amendment to the home-rule city act permitting*
*approval of bond issues by a majority of the electors voting*
*thereon must be automatically read into the Lansing City*
*Charter (CLS 1961, § 117.5, as amended by PA 1966, No 350).*

4. SAME—BONDS—CONSTITUTIONAL LAW—HOME-RULE ACT.

*Pursuant to constitutional mandate, the legislature pre-empted*
*the field of authorization requirements for municipal bond*
*issues by enacting the home-rule city act (Const 1908, art 8,*
*§§ 20, 21; Const 1963, art 7, §§ 21, 22; CLS 1961, § 117.5,*
*as amended by PA 1966, No 350).*

5. SAME—HOME-RULE ACT—BORROWING.

*The home-rule city act, pursuant to constitutional mandate, pro-*
*hibits cities from prescribing the mode and manner of bor-*
*rowing money and contracting debts (Const 1908, art 8, §§ 20,*
*21; Const 1963, art 7, §§ 21, 22; CLS 1961, § 117.5, as amended*
*by PA 1966, No 350).*

6. SAME—CHARTER—BONDS—HOME-RULE ACT.

*Charter provision of city that general obligation bonds be issued*
*when authorized by 3/5 vote of the electors was not inserted*
*by the framers of the charter by reason of any judgment or*
*discretion which they exercised, but was inserted because*
*it was required by the home-rule city act in effect at that*
*time (CLS 1961, § 117.5; Lansing City Charter § 8.10[a][1]).*

7. STATUTES—MUNICIPAL BONDS—MUNICIPAL CORPORATIONS.

*Provisions of State statutes affecting municipal bonds are to*
*be read into and are a part of the charters of cities and*
*other municipal corporations.*

8. Municipal Corporations—Bonds—Elections—Home-Rule City Act.

> *The legislature intended to nullify and make unlawful the previously adopted provision of the city charter which required 3/5 voter approval for general obligation bonds, when it amended the home-rule city act to require only majority approval (CLS 1961, § 117.5, as amended by PA 1966, No 350; Lansing City Charter, § 8.10[a][1]).*

9. Same—Borrowing Power—Home-Rule Cities.

> *The exercise of borrowing power by home-rule cities has long been recognized as a matter of State concern and subject to State review and control (CLS 1961, § 117.5[e], as amended by PA 1966, No 350).*

10. Bonds—Voter Approval—Municipal Corporations—Statutes.

> *The provision requiring approval by a 3/5 vote to authorize issuance of general obligation bonds was inserted in home-rule city charters under previous statutes as a statement of legislative requirement and not as an independent standard (CLS 1961, § 117.5).*

11. Municipal Corporations—Bonds—Elections—Legislature.

> *State legislature may amend or change by general law a city charter provision which requires 3/5 vote of qualified electors to authorize general obligation bonds, since such action is a matter of State rather than local concern.*

12. Same—Elections—Bonds.

> *Use of the 3/5 vote qualification in the resolution for a special election on a bond issue, although contrary to both statute and city charter, had meaning, since many electors might not have gone to the polls at all because they realized it would be difficult to obtain a 3/5 vote plurality (CLS 1961, § 117.5, as amended by PA 1966, No 350).*

13. Mandamus—Special Election—Certification.

> *City was not entitled to a writ of mandamus to compel the recertification of the results of a special election, where the board of canvassers correctly, but for a wrong reason, certified the proposals to have been defeated.*

14. Municipal Corporations—Bond Issue—Home-Rule Act—Void Resolution.

> *Resolution of city council and subsequent notices, which required 3/5 voter approval on a bond issue, held, contrary to home-*

*rule act and city charter at the time of adoption of resolution and void (CLS 1961, § 117.5, as amended by PA 1966, No 350).*

15. SAME—BONDS—ELECTIONS.

*Bond propositions, which received a majority but not 3/5 electorate approval in city election, held, properly certified as defeated by the board of canvassers, where the 3/5 vote requirement was used in the resolution of city council and subsequent notices.*

16. COSTS—PUBLIC QUESTION—MANDAMUS—SPECIAL ELECTION.

*No costs are allowed in mandamus proceeding to compel the recertification of a special election, a public question being involved.*

SEPARATE OPINION.

DETHMERS, C. J., and KELLY, O'HARA, and BRENNAN, JJ.

17. MUNICIPAL CORPORATIONS—ELECTIONS—BONDS.

*Bond propositions which received a majority but not 3/5 electorate approval in city election, held, not properly certified by board of canvassers as not approved, since controlling statute in effect on election day required majority approval only; and although city council by resolution authorized submission of the propositions to electorate under prior statute then in effect requiring 3/5 approval, no reference to this requirement appeared on the ballot (CLS 1961, § 117.5, as amended by PA 1966, No 350).*

18. SAME—ELECTIONS—APPROVAL OF BONDS.

*Former 3/5 electorate approval requirement under statute for bond proposition in city election, later amended to require a mere majority, held, surplusage, where used in city council's resolution to authorize election propositions, since the only reason for its inclusion in the resolution was that it appeared in the statute before the amendment (CLS 1961, § 117.5, as amended by PA 1966, No 350).*

19. SAME—ELECTIONS—MANDAMUS—BONDS.

*Writ of mandamus from circuit court compelling defendant city board of canvassers to certify bond propositions for street improvements and sewers, as approved by electorate in city election, held, proper, where propositions were approved by majority of voters as required by city charter and statute on election day (CLS 1961, § 117.5, as amended by PA 1966, No 350; Lansing City Charter, § 8.10[a][1]).*

20. Costs—Public Question—Mandamus—Elections.

No costs are involved in mandamus proceeding to compel per-
    formance of a legal duty to certify election results, a public
    question being involved.

SEPARATE OPINION.

ADAMS, J.

*See headnotes 8, 18.*

Appeal from Ingham, Coash (Louis E.), J. Sub-
mitted January 11, 1968. (Calendar No. 12, Docket
No. 51,799.) Decided April 1, 1968.

Mandamus by the City of Lansing to compel the
Board of Canvassers of the City of Lansing to re-
certify the results of a special election. Writ
granted. Defendant appeals. Application for by-
pass of the Court of Appeals granted. Municipal
Finance Commission intervened as appellee. Af-
firmed.

*Michael F. Cavanagh,* City Attorney, (*F. M.
Thrun,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Der-
engoski,* Solicitor General, and *Maxine Boord Virtue*
and *Milton I. Firestone,* Assistant Attorneys Gen-
eral, for intervening plaintiff Municipal Finance
Commission.

*Snyder, Loomis & Ewert* and *Roger T. Ederer,*
for defendant.

T. M. Kavanagh, J. (*dissenting*). This case is
here on appeal from the Ingham county circuit
court, which entered a judgment for the issuance of
a writ of mandamus compelling the defendant board

of canvassers to recertify the results of a special
election held in the city of Lansing on February 20,
1967. Application for bypass of the Court of Appeals was granted by this Court on August 3, 1967.

Plaintiff city submitted proposed bonding propositions to the electors of the city of Lansing in a special election on February 20, 1967. Two of the propositions—No. 6, for the issuance of bonds for street improvements, and No. 7, for the issuance of bonds for storm sewers and drains—received a majority but not a 3/5 vote of approval based on the official canvass of votes. The defendant board of canvassers certified that these propositions, among others, had failed to receive the required affirmative vote and, therefore, were defeated.

The city of Lansing took the position that the two propositions above mentioned had received the requisite votes of approval and demanded that the defendant board of canvassers recertify the results of the special election with respect to these two bonding propositions. Defendant refused to do so, and plaintiff brought this action seeking a writ of mandamus to compel the recertification of the election. The circuit court granted plaintiff city the relief requested.

The attorney general of the State of Michigan intervened in the case on August 15, 1967, pursuant to CL 1948, § 14.28 (Stat Ann 1961 Rev § 3.181) and CL 1948, § 14.101 (Stat Ann 1961 Rev § 3.211).

The charter of the city of Lansing originally provided that general obligation bonds may be issued "when authorized by a *3/5 vote* of the electors having the constitutional qualifications for voting on the issuance of general obligation bonds, voting thereon at any general or special election." (Section 8.10 [a][1].) (Emphasis added.)

At the time of the adoption of the charter provision, section 5(e) of the city home-rule act provided that a 3/5 vote was necessary for approval of the issuance of general obligation bonds.[1]

This section of the statute was amended by PA 1966, No 350,[2] to provide that only a majority of the electors voting on bonding propositions at general or special elections held on or after April 1, 1966, was necessary for approval.

There is an apparent conflict between the provision of the charter of the city of Lansing requiring a 3/5 vote of approval and the city home-rule act providing for only majority approval.

The board of canvassers for the city of Lansing, against which the writ of mandamus is sought, takes the following positions:

*First.* The legislature did not intend when it amended section 5(e) of PA 1909, No 279, to nullify and make unlawful the lawfully adopted provision of the Lansing city charter.

*Second.* The charter provision requiring the 3/5 vote qualification to authorize bonds of the type here involved is beyond the power and jurisdiction of the State legislature to amend or change by general law because such charter provision involves a matter of local concern.

*Third.* The 3/5 vote qualification in the city charter was not inserted therein as a statement of a legislative requirement but as an independent standard authorized to be established by PA 1909, No 279, as amended, and by the home-rule provisions of the Michigan Constitutions of 1908 and 1963.

*Fourth.* The resolution of the city council of the city of Lansing specified that each of said issues of

---

[1] CLS 1961, § 117.5(e) (Stat Ann 1963 Cum Supp § 5.2084).— REPORTER.

[2] CL 1948, § 117.5, as amended (Stat Ann 1968 Cum Supp § 5-.2084).

bonds would be issued and sold by the city of Lansing "if authorized by a 3/5 vote of the qualified electors of the city of Lansing voting thereon, *as required by the charter of the city of Lansing.*" (Emphasis added.)   This resolution was never amended.   In each case the form of the ballot was substantially the same, reading as follows:

"Shall the city of Lansing issue &ast; &ast; &ast; general obligation &ast; &ast; &ast; bonds &ast; &ast; &ast; all as prescribed in a certain resolution of the Lansing city council of December 21, 1966?"

The same language appeared on the notice of election, the voting machine strips, and the absentee ballots.

Const 1963, art 7, §§ 21 and 22, provides as follows:

"Sec. 21.   The legislature shall provide by general laws for the incorporation of cities and villages. Such laws *shall limit their rate of ad valorem property taxation* for municipal purposes, *and restrict the powers of cities and villages to borrow money and contract debts.*   Each city and village is granted power to levy other taxes for public purposes, subject to limitations and prohibitions provided by this constitution or by law.   (Emphasis added.)

"Sec. 22.   Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.   Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law.*   No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."   (Emphasis added.)

Const 1908, art 8, §§ 20 and 21, contained similar provisions.

Pursuant to the former constitutional mandate, the legislature pre-empted the field by enacting section 5 of the home-rule act[3] providing in part:

"No city shall have power:  *  *  *

"(e)  *  *  *  or authorize any issue of bonds except bonds issued in anticipation of the collection of taxes actually levied and uncollected or for which an appropriation has been made, bonds which the city is authorized by its charter to issue as part of its budget system, to an amount which in any year together with the taxes levied for the same year, will not exceed the limit of taxation authorized by law, special assessment bonds, bonds for the city's portion of local improvements, refunding bonds, and emergency bonds as defined by this act, *unless approved by 3/5 of the electors voting thereon at any general or special election.*"  (Emphasis added.)

After the adoption of the Constitution of 1963, this section was amended by PA 1966, No 350,[4] changing the last portion of the original section to read:

"*  *  *  unless approved by *a majority* of the electors voting thereon at any general or special election.  Notwithstanding the former provisions of this subsection requiring approval by 3/5 of the electors voting thereon as a prerequisite to the exercise of certain powers, any such powers may be exercised if approved by a *majority of the electors voting thereon at any general or special election held on or after April 1, 1966.*"  (Emphasis added.)

Since the propositions voted on at the Lansing special election on February 20, 1967, involved the power of the city "to borrow money and contract

---

[3] CL 1948, § 117.5 (Stat Ann 1949 Rev § 5.2084).
[4] CL 1948, § 117.5, as amended (Stat Ann 1968 Cum Supp § 5-.2084).

debts," the legislative amendment permitting approval by a majority of the electors voting thereon, must be automatically read into the charter. The general act of the legislature pre-empts the field pursuant to constitutional mandate and prohibits the cities from prescribing the mode and manner of borrowing money and contracting debts.

The provision in the charter of the city of Lansing that general obligation bonds be issued when authorized by a 3/5 vote of the electors was not inserted by the framers of the charter by reason of any judgment or discretion which they exercised, but was inserted therein because it was required by the city home-rule act in effect at that time. See *City Commission of the City of Jackson* v. *Vedder* (1920), 209 Mich 291, where, under similar circumstances, the Court said (p 294):

"Had the charter provided the bonding limit might be raised or lowered by any different vote than that prescribed by the statute, it obviously would have been of no force. Or had the charter been silent as to the requisite majority, and this controversy had arisen, a construction of the charter would have required us to read into it the legislative provision. This being true, when the legislature amended the act by requiring a 3/5 vote instead of a 2/3 vote, the amendment was automatically read into the charter, and is now a part of it."

This Court held in the *City of Hazel Park* v. *Municipal Finance Commission* (1947), 317 Mich 582, and *Hall* v. *Ira Township* (1957), 348 Mich 402, that it is well-established law in Michigan that provisions of State statutes affecting municipal bonds are to be read into and are a part of the charters of cities and other municipal corporations.

It is clear that the legislature intended to nullify and make unlawful provisions such as contained in

section 8.10[a][1] of the charter of the city of Lansing.

The last portion of section 5(e) as amended by PA 1966, No 350, effective December 21, 1966, reads:

"Notwithstanding the former provisions of this subsection requiring approval by 3/5 of the electors voting thereon as a prerequisite to the exercise of certain powers, any such powers may be exercised if approved by a majority of the electors voting thereon at any general or special election held on or after April 1, 1966."

The amendment portrays intent of the legislature to make the terms thereof applicable to any general or special election held on or after April 1, 1966, and could not have been directed solely to the Lansing election since that election did not take place until February, 1967. Therefore, it is apparent that it was directed to all cities which had charter provisions similar to those involved in this case.

The exercise of borrowing power by home-rule cities has long been recognized as a matter of State concern and subject to State review and control. See *City of Hazel Park* v. *Municipal Finance Commission, supra;* PA 1943, No 202, as amended.[5]

We conclude, therefore, that the legislature did intend to amend the charter of the city of Lansing and similar provisions in all city charters and to nullify and make void the former provisions in those charters when it amended section 5(e) of PA 1909, No 279. The provision requiring approval by a 3/5 vote to authorize issuance of bonds of the type here involved was inserted in city charters under previous statutes as a statement of legislative requirement

---

[5] CL 1948 and CLS 1961, § 131.1 *et seq.* (Stat Ann 1958 Rev and 1968 Cum Supp § 5.3188[1] *et seq.*), giving general powers to the municipal finance commission to protect the credit of the State and its municipalities.

and not an independent standard.  Such action, being a matter of State rather than local concern, was within the power and jurisdiction of the legislature to amend or change by general law.

On December 21, 1966, the effective date of the amendment made by PA 1966, No 350, the Lansing city council adopted a resolution specifying that the bonds would be issued and sold by the city *"if authorized by a 3/5 vote* of the qualified electors of the city of Lansing voting thereon, *as required by the charter of the city of Lansing."*   (Emphasis added.) This resolution called the special election for February 20, 1967.  The form of the ballot for each proposition read substantially as follows:

"Shall the city of Lansing issue   *   *   *   general obligation   *   *   *   bonds   *   *   *   all as prescribed in a certain resolution of the Lansing city council of December 21, 1966?"

The same language appeared on the notice of election, the voting machine strips, and the absentee ballots.  No explanation is offered by the attorney general or the city of Lansing as to why the 3/5 vote qualification was used, except to say that the recital therein is strictly surplusage, and merely recited the restriction as set forth in the charter.  It is argued that the provision in the resolution is, therefore, inconsequential.  With this we cannot agree.

The proposition clearly indicated that the bonds would be issued *only* "if authorized by a 3/5 vote of the qualified electors of the city of Lansing voting thereon."

The city now argues, correctly, that the charter of the city of Lansing was automatically amended by the amendment to section 5(e) of the statute effective December 21, 1966.  The city cannot be

permitted to argue that the use of the 3/5 vote qualification in the resolution had no meaning. This resolution, adopted on the effective date of the amendment to the statute and the automatic amendment to the charter, was contrary to both the statute and the charter at the time of the adoption of the resolution by the Lansing city council. If the resolution were valid, the city is asking the board of canvassers to disregard the mandate of the electors. Practically speaking, many electors, recognizing the difficulty of obtaining a 3/5 vote qualification, might not have gone to the polls at all simply because they realized it would be difficult to obtain such a plurality.

*McMullen* v. *Ingham Circuit Judge* (1894), 102 Mich 608, is a similar situation. There this Court refused to dissolve an injunction restraining the board of supervisors of Cheboygan county from proceeding to borrow upon the credit of the county and issue bonds for the purpose of financing the building of a new courthouse. The resolution adopted by the board of supervisors calling the election provided that the board of supervisors be authorized to borrow $35,000 upon the faith and credit of the county of Cheboygan and to issue the bonds of said county, to be paid in 10 installments within 30 years of the date of their issuance. The electors approved. The statute gave the board of supervisors power to pay by a tax upon the county any loan made by the board of supervisors and approved by the electors. Loans in all cases were to be payable within 15 years from the date of such loans. This Court held that the voters were clearly led to believe that the bonds would not be payable in 15 years, but would be extended over a period of 30 years, that no such authority was given by law, and that the resolution and action by the board of supervisors was void. The Court further held that if the resolution author-

izing sale of the bonds was valid, the board disregarded the instructions of the electors by attempting to make the bonds payable within the statutory limit of 15 years by a subsequent resolution.

We conclude in the instant case that the resolution of the Lansing city council and subsequent notices, adopted after the amendment to the statute and the automatic amendment to the charter had become effective, were contrary to the statute and the charter at the time of their adoption by the Lansing city council and were, therefore, void. The board of canvassers for the city of Lansing having correctly—even if for a wrong reason—certified the proposals to have been defeated, the city of Lansing is not entitled to a writ of mandamus. The judgment and order of writ of mandamus entered by the trial court should be reversed, vacated and set aside, and the cause dismissed.

A public question being involved, no costs are allowed.

BLACK and SOURIS, JJ., concurred with T. M. KAVANAGH, J.

O'HARA, J. The city of Lansing submitted 2 bonding proposals to its electorate. They are herewith set forth as they appeared on the ballot:

## "PROPOSITION NO. 6

### Street Improvement Bonds

"Shall the city of Lansing issue $4,325,000.00 of general obligation street improvement bonds for laying out, constructing, and improving new and existing streets, grade separations, and bridges constituting a part of the street system, and for acquiring lands and rights-of-way therefor, all as pre-

scribed in a certain resolution of the Lansing city council of December 21, 1966?

"YES ☐
"NO ☐

## "PROPOSITION NO. 7

### Storm Sewer and Drain Bonds

"Shall the city of Lansing issue $3,720,000.00 of general obligation storm sewer and drain bonds for adding to, extending, replacing and improving existing storm sewers and drains, and to construct new storm sewers and drains, and to acquire lands and rights-of-way therefor, all within the city of Lansing, all as prescribed in a certain resolution of the Lansing city council of December 21, 1966?

"YES ☐
"NO ☐

Proposition No. 6 carried 5,034 to 4,202.
Proposition No. 7 carried 4,971 to 4,220.

The controlling statute as amended which was in effect on the date of the election required approval of the propositions only by a majority of the electors voting thereon. The effective date of the amendment to that statute was the same date as that upon which the city council, by resolution, provided for the submission of the propositions to the electorate. The statute, as amended,[1] provided:

*"Notwithstanding the former provisions of this subsection requiring approval by 3/5 of the electors voting thereon as a prerequisite to the exercise of certain powers, any such powers may be exercised if approved by a majority of the electors voting thereon at any general or special election held on or after April 1, 1966."* (Emphasis added.)

[1] CLS 1961, § 117.5, as amended by PA 1966, No 350 (Stat Ann 1968 Cum Supp § 5.2084).

The election here involved took place February 20, 1967. That is, after April 1, 1966. The statute seems to me to be very plain.

The purpose of the resolution by the city council was to permit the submission of the proposals to the electorate. That purpose does not seem to me to be affected by whether approval was required by a simple majority or by 3/5 of the electorate voting. I am unable to follow Justice T. M. KAVANAGH in concluding that the election was a nullity. There was no reference on the ballot as to what percentage of the electorate was required for approval. The issue was clear on both ballots "shall the city of Lansing issue   *   *   *   general obligation   *   *   * [(proposal 6) street improvement (proposal 7) storm sewer and drain] bonds."

We all agree that the city charter was so amended:

"The city now argues, correctly, that the charter of the city of Lansing was automatically amended."[2]

Hence, the only basis for vitiating the election is that the resolution of the city council, authorizing submission of the proposition to the electorate, contained the prior statutory language "3/5 of the electors voting thereon". True, the ballot makes reference to the council resolution, but I cannot agree that such reference in any manner clouded the issue before the voters. Certainly it is nowhere suggested that there was any intent to deceive the electorate by the form of the ballot; nor can I find any basis in the record for Justice T. M. KAVANAGH's supposition that:

"Practically speaking, many electors, recognizing the difficulty of obtaining a 3/5 vote qualification, might not have gone to the polls at all simply because they realized it would be difficult to obtain such a plurality."

---

[2] See opinion by T. M. KAVANAGH, J., p 507.—REPORTER.

I agree with the contention of the attorney general and appellee city that the amendment to the statute rendered the language of its former requirement of approval by "3/5 of the electors voting thereon" as used in the council's resolution surplusage. I can hardly conceive that the resolution was at once drafted, considered, and acted upon all at the same council meeting. I can find no logical basis for its inclusion in the resolution other than that it appeared in the statute before the amendment.

Both propositions carried by a majority as required by the city charter as it stood on the date of the election. The board of canvassers should have so certified. It was its clear legal duty so to do. The circuit judge allowed a writ of mandamus to compel the performance of that legal duty. He was right.

Affirmed. No costs, a public question.

DETHMERS, C. J., and KELLY and BRENNAN, JJ., concurred with O'HARA, J.

ADAMS, J. (*concurring in affirmance*). I agree with Justice T. M. KAVANAGH "that the legislature did intend to amend the charter of the city of Lansing and similar provisions in all city charters and to nullify and make void the former provisions in those charters when it amended section 5(e) of PA 1909, No 279".

I agree with Justice O'HARA that the statute as amended (CL 1948, § 117.5, as amended by PA 1966, No 350 [Stat Ann 1968 Cum Supp § 5.2084]) rendered the "requirement of approval by '3/5 of the electors voting thereon' as used in the council's resolution surplusage."

I vote to affirm.